IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PHILLIP and DARLENE EVITTS, both )
Individually and as the next friends and )
Parents of JAMISON TAYLOR EVITTS, )
a deceased minor, and LYNN and )
MARGARET FRYE, both Individually and )
as the next friends and parents of KELLY )
LYNN FRYE, a deceased minor, )
)
        Plaintiffs, )
)
)   CASE NO. 2:05-0021
v. )   JUDGE KNOWLES
)
)
THE UNITED STATES OF AMERICA, )
)
        Defendant. )

## MEMORANDUM OPINION

### I. Introduction and Background

This matter is before the Court upon Defendant's Motion to Dismiss, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction. Docket Entry No. 27. Specifically, Defendant maintains that Plaintiffs' claims are barred by the discretionary function exception to the Federal Tort Claims Act ("FCTA"), 28 U.S.C. § 2680(a). *Id.* In support of its Motion, Defendant has contemporaneously submitted a Memorandum of Law (Docket Entry No. 28), the Declaration of William Barnes (Docket Entry No. 30), the Declaration of Avis Kennedy (Docket Entry No. 31), the Declaration of Richard Puckett (Docket Entry No. 32), the Affidavit of Jackie Vied (Docket

1

Entry No. 33), the Declaration of Kathryn Firsching (Docket Entry No. 34), and the Declaration of Michael George Ensch (Docket Entry No. 35).

Plaintiffs have filed a Response. Docket Entry No. 46. Along with their Response, Plaintiffs' have submitted "Material Statements of Undisputed Fact Opposing Defendant's Motion to Dismiss" with Exhibits. Docket Entry No. 47. Plaintiffs' Exhibits include the Depositions with Exhibits (or Deposition Excerpts with Exhibits) of Ralph Ownby, William Barnes, Jackie Vied, Avis Kennedy, Richard Puckett, Tom Mabry, Peter Parsonson, Preacher Anderson, and Jessica Underwood, as well as the Affidavit of Billy Phiplot, and the "Center Hill Lake Response to 1985 Disposition Form, Including Series of Completed Access Evaluation Checklists With Photographs For Lake Access Points Ending in Water." *See* Docket Entry No. 49, Index of Attachments to Plaintiffs' "Material Statements of Undisputed Fact."

Plaintiffs filed this wrongful death action, pursuant to the Federal Tort Claims Act, both individually and as the next friends and parents of two minors who "drowned when their vehicle entered Cordell Hull Lake from a public road" known as Holleman's Bend Road. Docket Entry No. 1. Defendant built and owns Cordell Hull Dam and created Cordell Hull Lake in the 1970s. Docket Entry No. 17, ¶¶ 9, 13. Defendant owns certain land, a parking lot, and a boat launch ramp adjacent to Holleman's Bend Road. *Id.*, ¶¶ 13, 19. Plaintiffs aver that Defendant "negligently undertook implementation of a mandatory directive to remedy safety defects where roads end in water." *Id.* Plaintiffs generally argue that the road was in an unsafe and dangerous condition, that Defendant had actual knowledge of the unsafe and dangerous condition of the road, and that Defendant had a general duty to remedy the unsafe and dangerous condition and/or to warn members of the public of the condition. *Id.* Plaintiffs have also asserted a theory that the

2

road (or part of the road) was "abandoned," and that Defendant failed to comply with its policy concerning abandoned roads. Docket No. 46, p. 20. Plaintiffs seek compensatory damages and costs, as well as other relief "as the Court deems appropriate." *Id.*

Defendant filed an Answer in which it generally denied that it had the obligations alleged by Plaintiff with regard to the road. Docket No. 17. Defendant also raised the defense of comparative fault. *Id.* Defendant further asserted that the Court lacks subject matter jurisdiction of this case, because the actions of Defendant fall within the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). *Id.*

## II. Law and Analysis

### A. Fed. R. Civ. P. 12(b)(1): Motion to Dismiss for Lack of Subject Matter Jurisdiction

The instant Motion is filed pursuant to Fed. R. Civ. P. 12(b)(1), which provides that the defense of "lack of jurisdiction over the subject matter" shall either be asserted in a responsive pleading or in a separate Motion. As will be discussed in greater detail below, Defendant's theory is that part of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), is a waiver of the sovereign immunity of the United States, in specified circumstances. The Federal Tort Claims Act, however, does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If this "discretionary function" exception applies, the sovereign immunity of the United States is not waived by the Federal Tort Claims Act, and this Court has no jurisdiction over the case. *Sharp v. United States,* 401 F.3d 440, 443 (6th Cir. 2005). Thus, Rule 12(b)(1) is the appropriate method for the Government to raise this issue.

3

A party seeking to dismiss a claim pursuant to Rule 12(b)(1) may raise either a facial attack to the complaint or a factual attack on the allegations averred in the pleadings. *See Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). A facial attack is a challenge to the court's subject matter jurisdiction that takes the material allegations of the complaint as true and construes them in the light most favorable to the nonmoving party. *See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134-35 (6th Cir. 1996). In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994); *see also, Ohio Nat'l Life,* 922 F.2d at 325.

In the case at bar, Defendant launches a factual attack upon this Court's subject matter jurisdiction. Where a court considers a factual, rather than a facial, jurisdictional attack, it is free to weigh the evidence and resolve disputed questions of fact bearing on the court's jurisdiction.[1] *See Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986); *Ohio Nat'l Life,* 922 F.2d at 325. The Sixth Circuit has cautioned, "[A] motion to dismiss under Fed. R. Civ. P. 12(b) - and in particular a motion citing a jurisdictional defect under Fed. R. Civ. P. 12(b)(1) - requires a preliminary hearing or hearing at trial to determine any disputed facts upon which the motion or the opposition to it is predicated." *Commodities Export Co. v. United States Customs Serv.,* 888 F.2d 431, 436 (6th Cir. 1989) (citations omitted).

The standard to be applied in determining whether a hearing is required is equivalent to

---

[1] Plaintiffs argue in their Response that the Court must view the evidence and draw all reasonable inferences in favor of Plaintiffs and that the facts they have asserted "should be presumed to be valid . . . ." Docket Entry No. 46, p. 11-12. If Defendant's Motion involved a facial attack to the Complaint, the Court would apply the standard advocated by Plaintiffs. That standard, however, is not applicable to Defendant's factual jurisdiction attack.

4

that used under Fed. R. Civ. P. 56(c): that is, where genuine issues of material fact exist, they must be submitted to decision on the evidence. *Commodities*, 888 F.2d at 436, *citing Cook v. Providence Hosp.*, 820 F.2d 176, 178 (6th Cir. 1987). Only "where the facts are relatively simple, [and] substantially uncontroverted, and the law is not complex, is a district court justified in ruling on a motion under Fed. R. Civ. P. 12(b)(1) without pausing to make findings on disputed questions of fact." *Id.*, at 437, *citing Cook*, 820 F.2d at 178.

## B. The Federal Tort Claims Act and The Discretionary Function Exception

The United States Constitution entrusts Congress with the exclusive power to determine a lower federal court's subject matter jurisdiction. *See* U.S. CONST. art. III, § 1; *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). Congress has provided district courts with subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2005). The doctrine of sovereign immunity prohibits suits against the United States, however, unless Congress has consented to the Government's being sued. *See Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004), *citing United States v. Orleans*, 425 U.S. 807, 814 (1976).

Through its enactment of the FTCA, Congress has waived the United States' immunity from suits:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA also makes the United States liable "in the same manner and

to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. *See generally, Dolan v. United States Postal Serv.,* 126 S.Ct. 1252, 1256 (2006).

The waiver of sovereign immunity in the FTCA is subject to a number of exceptions, including the discretionary function exception codified in 28 U.S.C. § 2680(a). That section provides that 28 U.S.C. § 1346(b) (and, therefore, its waiver of sovereign immunity) does not apply to "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The Supreme Court has set forth a two stage analysis to determine whether the discretionary function exception applies, thereby barring the claim. *See Berkovitz v. United States,* 486 U.S. 531, 536-37 (1988); *Gaubert v. United States*, 499 U.S. 315 (1991). The Court must first determine whether the conduct involves an element of judgment or choice, or whether a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. If the latter is the situation, the inquiry is at an end, and the discretionary function exception does not apply. If, however, the conduct involves an element of judgment or choice, the Court must next determine whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 541. In considering this issue, the Court determines whether the judgment is "grounded in social, economic, or political policy." *Gaubert,* 499 U.S. at 323, *quoting United States v. Varig Airlines,* 467 U.S. 797, 813. If the judgment of the governmental official is based on any of these policy considerations, then the discretionary function exemption applies and the claim is barred. *Cottage v. U.S.*, WL 2422895, *3 (N.D. Ohio 2006).

## C. The Case at Bar

Defendant's Motion essentially argues that there is no mandatory or specific regulation that dictated what safety measures were required at the site of the incident. Defendant argues that, for various reasons, two documents referred to in Plaintiff's Complaint are either inapplicable or do not set forth mandatory requirements. Defendant further argues that its decisions on whether and how to make land safe for visitors involve policy judgments.

Plaintiffs argue that a 1985 "policy," based upon a 1984 "Order," mandated a specific course of action, and that, accordingly, the discretionary function exception does not apply. Docket Entry No. 46. Plaintiffs argue that the 1985 policy is set forth in a "Disposition Form," which states in pertinent part as follows:

> 2. The ad hoc design team referred to in paragraph 3 of the above-referenced letter met on 27 February 1985. As a result of this meeting, it was agreed that:
>
> b. The following types of access points *will be inspected and evaluated* for potential safety deficiencies NLG 1 May 1985: ... 3) *old roads that end in the lake*, regardless of whether or not they are designated as sites in the project Master Plan.

Docket Entry No. 47-11, p. 8, Ex. 3 to Deposition of Avis Kennedy (emphasis added).

Defendant maintains that the "Disposition Form" is not a "mandatory directive," and does not constitute a "policy." Docket Entry No. 28, p. 8. Defendant further maintains that the "Disposition Form" is inapplicable because Holleman's Bend Road does not end in water. *Id.*, at p. 10. Defendant argues that Holleman's Bend Road "terminates approximately 95 feet before the water's edge," and notes that "[a] gravel parking area and boat ramp are located to the right of the road's end." *Id.*

The "Disposition Form" included an "Access Evaluation Checklist" that was to be

7

utilized in the inspection and evaluation of specified areas.[2] Docket Entry No. 47-11, p. 11, Ex. 3 to Deposition of Avis Kennedy. Plaintiffs maintain that the required "Access Evaluation Checklist" was never completed. Docket Entry No. 47. Plaintiffs contend that because

---

[2]The "Access Evaluation Checklist" reads as follows:
PROJECT _____
1. Site Name _____
   Is this site a designated access point? Abandoned road?
2. Length of Access roadway __ ft. Type of roadway surface
3. Is the roadway a continuation of a state, country or a township road?
4. Does the alignment of the roadway permit a straight line access to the water or water related hazard?
5. Is the roadway open to the public on a 24 hour basis? Year round?
6. How is the roadway closed when not in use? (gate, barricade, sign, etc.)
   Provide a description of the gate, barricade or signs that are used.
7. <u>Sign Installation.</u> Have the following signs been utilized?
   a. Road Ends in Lake
   b. Speed limit (specify)
   c. Stop sign
   d. Safety message
   e. Other warning sign(s)
   f. Entrance sign showing area name, facilities, etc.
8. Have speed bumps or rumble strips been installed? If so, at what distance from the hazard? At what intervals?
9. If a roadway provides direct straight line access to lake or involves a definite hazard due to its alignment, provide a sketch and recommendations to eliminate or minimize the hazard. If additional signs are impractical, specify reason here:
10. Can the solution be accomplished by project personnel?, by contractor on SF-44, NTE standard procurement policies, regulations?, are plans and specifications required? Approximate cost
11. Have there been any serious accidents or fatalities that have occurred at this location? If so provide dates, brief description of the accident, and probable cause.

Docket Entry No. 47-11, p. 11, Ex. 3 to Deposition of Avis Kennedy.

8

Case 2:05-cv-00021 Document 73 Filed 02/02/07 Page 8 of 12 PageID #: 834

Defendant did not complete the required "Access Evaluation Checklist," it did not follow the mandate of the "Disposition Form." *Id.* Defendant argues that the fact that the completed evaluation cannot be located does not mean that the evaluation was not done, and that regardless, "any alleged failure to fill out the checklists is not causally related to the accident in issue, and is not the conduct that is at issue for purposes of the discretionary function." Docket Entry No. 28, pp. 11-12.

Plaintiffs note that Holleman's Bend Road "was never identified and never examined as a road ending in water even though it had straight-line access, because it was wrongly assumed that the road was under the control of Jackson County." Docket Entry No. 47, p. 7. Plaintiffs contend, however, that, had Defendant inspected the site as required, the dangerous conditions leading to decedents' accident would have been identified and rectified, and the accident at issue would not have occurred. *Id.*, pp. 8, 19.

Additionally, Plaintiffs and Defendant dispute the applicability of Section 3(g) of the "Disposition Form," which pertains to "Signs," and which states as follows:

> The prescribed format for such signs is a diamond-shaped warning sign (black letters on a yellow background) reading "ROAD ENDS IN WATER 300 FEET" to be placed 300 feet from full flood control pool. The draft nationwide sign manual also requires a second sign that reads "WARNING ROAD ENDS IN LAKE" to be located closer to the ramp. The ad hoc design team has agreed that such signs *should be used at all lake access points unless their absence can be justified as not feasible or unnecessary.* It is expected that the signs will not be feasible in many areas due to configuration of roads and parking lots or project lands extending less than 300 feet beyond flood pool. Signs may be considered unnecessary because of road configuration, location of ramp within a campground, or other safeguards already in place.

Docket Entry No. 47-11, p. 8, Ex. 3 to Deposition of Avis Kennedy (emphasis added). The

9

parties essentially dispute feasibility due to the configuration of the road and parking lot.

Plaintiffs and Defendant also dispute whether the road was abandoned, and therefore whether Section 3(h) of the "Disposition Form," which pertains to "Closure," applies. Section 3(h) reads as follows:

> If an unsafe condition exists at an abandoned road, closure of the road should be considered. Roads may be blocked with gates, barricades, trees, or a combination of these.

Docket Entry No. 47-11, p. 8, Ex. 3 to Deposition of Avis Kennedy.

Plaintiffs argue:

> [Defendant] allowed vegetation to naturally grow up between the parking lot and the Lake, including over that portion of Holleman's Bend Road extending beyond the parking lot. This vegetation and growth obscured or concealed the existence of water at the end of the Road to persons using the Road. ... In situations where [Defendant] allows roads to have natural overgrowth grow across a road, [Defendant] will put up a physical barrier with a sign notifying the public that the road is closed, and allowing overgrowth to occur is the equivalent of abandoning or closing a road. ... Having failed to follow through with proper road closure [Defendant] thereafter effectively abandoned the remaining portion of the Road, not maintaining it beyond the parking lot or otherwise keeping it clear and allowing natural overgrowth to occur.

Docket Entry No. 46, pp. 3-4.

Defendant maintains that it did not abandon Holleman's Bend Road beyond the parking lot because the road itself did not extend beyond the parking lot, and therefore, there was no road to abandon. Docket Entry No. 28. Plaintiffs counter that, since Defendant claims that it did not abandon that portion of the road, Defendant did not follow its own procedures. Docket Entry No. 46, p. 4.

With regard to the overgrowth of vegetation, Defendant notes that it "has a long-standing

10

policy to minimize mowing along its lakes as an environmental measure," and that "Trees and bushes provide wildlife habitat and prevent erosion of the shoreline." Docket Entry No. 28, p. 17. Accordingly, Defendant reports that it "chose not to have a mown buffer at the end of the road, in part because this would disturb the natural vegetation." *Id.*

Plaintiffs additionally argue that, in 1985, Defendant "made a policy choice to deal with the safety hazards endemic to roads ending in water at all Nashville District Lakes, and this policy was carried forward in detail in the Operations Management Plan for Cordell Hull Lake."[3]

---

[3]The Operations Management Plan for Cordell Hull Lake provides in pertinent part:

| | |
|---|---|
| 14-5(d): | Hazards to public safety will be eliminated, marked, or guarded. . . . |
| 14-8: | The Project Safety Officer (see paragraph 15-2) will make continuing surveys of all lake activities to ensure compliance with the general safety requirements. Checklists for use in making safety surveys are included in Appendix I ... |
| 15-2: | The Assistant Resource Manager will serve as Project Safety Officer ... |
| 15-5: | The Project Safety Officer will make continuing surveys fo all water resource project activities to ensure compliance with the general safety requirements ... |
| Appendix I: | The Project Safety Officer will become thoroughly familiar with the provisions of EM 385-1-1. He or she will make continuing surveys of all lake activities to insure that compliance with the General Safety Requirements is maintained. This includes the survey and inspection of administrative facilities, public use areas, water-based activities, and hunting areas. Examples of safety hazards endemic to Cordell Hull Lake are roads which dead-end into the reservoir, venomous insects, floating drift, and hazardous driving on area roads. The posting of such areas with signs designating the scope of activities which would endanger lake personnel, the public, and/or property, and which are prohibited in or near these areas has been or will |

11

Docket Entry No. 46, p. 7. Plaintiffs maintain, *inter alia*, that the Operation Management Plan imposed a continuing obligation, via a designated safety officer, to inspect, identify, and remedy or warn of hazards, but that, despite the provisions of the Plan requiring a designated safety officer, local lake officials did not assign anyone to fill that position when the assistant manager retired. *Id.*

The parties in this case have raised a multitude of disputed facts. The resolution of many of those disputed facts bears directly upon Defendant's Motion to Dismiss and the issue of this Court's subject matter jurisdiction. Based upon the authorities discussed above, the Court must hold a hearing to resolve the relevant disputed facts before the Court can determine whether it has jurisdiction to proceed further in this case.

Accordingly, Defendant's Motion to Dismiss will be DENIED, with leave to renew or refile, as may be appropriate, following a hearing, which will be set by a separate Order.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

---

<div style="margin-left: 2em;">
be accomplished. ...
Appendix I-3: The following are applicable to roads ... [and] parking areas ...
(2) Physical hazards adequately signed ...
(5) Blind curves and intersections eliminated ...
(6) Realistic speed limits established and properly posted ...
</div>

Docket Entry No. 47-12, pp. 1325, 1327, 1328, 1331, 1334, and 1336, Ex. 8 to Deposition of Avis Kennedy.